# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ABDUL LATIF HAWKINS CHEADLE,** : <br> **Petitioner** : <br> : <br> v. : <br> : <br> **WARDEN R. THOMPSON,** : <br> **Respondent** : | No. 1:21-cv-00480 <br><br> (Judge Kane) |

## MEMORANDUM

On March 17, 2021, pro se Petitioner Abdul Latif Hawkins Cheadle ("Petitioner"), who is currently confined at the Federal Correctional Institution Allenwood-Low in White Deer, Pennsylvania ("FCI Allenwood-Low"), initiated the above-captioned case by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the decision of a Disciplinary Hearing Officer ("DHO") who found him in violation of Code 297, engaging in phone abuse—disrupt monitoring. (Doc. No. 1.) Following an Order to show cause (Doc. No. 6), Respondent filed a response, contending that Petitioner "received all due process protections and sufficient evidence existed to support the DHO's finding" (Doc. No. 15 at 1). Petitioner filed his traverse on June 1, 2021. (Doc. No. 16.) Accordingly, Petitioner's § 2241 petition is ripe for disposition.

## I. BACKGROUND

On July 8, 2020, at 3:22 p.m., Petitioner called a phone number with area code 773. (Doc. No. 15-1 at 4.) Petitioner had provided contact information for this number beforehand, providing a first name of "Rev," a last name of "Rev," and an address of Calumet Park, Illinois. (Id.) On July 20, 2020, Officer Albright became aware that Petitioner had provided incorrect information. (Id.) TRUFONE, the Bureau of Prisons ("BOP")'s inmate telephone system, had identified the area code and location of the phone number as being in Chicago, Illinois. (Id.) Furthermore, seven (7) other inmates at FCI Allenwood-Low had added the same phone number

to their contact lists, with each inmate providing a different name for the contact. (Id.) Officer Albright noted that Petitioner's decision to not provide correct information prohibited "monitoring staff from knowing the true identity of this contact." (Id.) Officer Albright issued Incident Report 3417287, charging Petitioner with a violation of Code 297—phone abuse-disrupt monitoring. (Id.)

The Incident Report was issued at 11:19 a.m. on July 20, 2020; Petitioner received a copy two (2) hours later. (Id.) Petitioner was advised of his right to remain silent and indicated that he understood that right. (Id. at 6.) Petitioner did not make a statement and did not request any inmate witnesses. (Id.) The Incident Report was referred to the Unit Disciplinary Committee ("UDC") for further proceedings. (Id.) Petitioner appeared before the UDC on July 21, 2020. (Id. at 5.) Due to the severity of the incident, the UDC noted that it was "an automatic DHO referral." (Id.) Petitioner was advised of his rights—specifically, his right to have a staff representative, his right to call witnesses, and his right to present documentary evidence. (Id. at 8.) Petitioner did not request a staff representative or witnesses, and he signed the Inmate Rights at Discipline Hearing forms, acknowledging that he had received notice of his rights. (Id. at 8-10.)

Petitioner appeared before the DHO on July 30, 2020. (Id. at 12.) At the beginning of the hearing, the DHO advised Petitioner of his rights, and Petitioner provided the following statement: "My phone numbers have always been the same." (Id.) Petitioner did not provide any documentary evidence, and he did not reference any procedural issues. (Id.) The DHO found the charge of Code 297 to be supported by the greater weight of the evidence. (Id. at 14.) In doing so, the DHO considered the Incident Report, Petitioner's verbal statement, BOP

Program Statement 4500.12, and the Accurint[1] report. (Id. at 13-14.) The DHO sanctioned Petitioner with disallowance of twenty-seven (27) days of good conduct time and three (3) months' loss of phone and commissary privileges. (Id. at 15.) The DHO issued his report on July 31, 2020, and a copy was delivered to Petitioner on August 6, 2020. (Id.)

Petitioner then filed the instant § 2241 petition. (Doc. No. 1.) In his petition, Petitioner argues that the Incident Report should have charged him with a violation of Code 313, lying or providing false and/or fictitious information regarding a contact. (Id. at 7.) Petitioner suggests that Officer Albright is "indifferent towards inmates of different ethnic backgrounds" because he only charged black inmates with violations of Code 297. (Id.) He avers that the DHO failed to honor his duties as a hearing officer, and that if BOP staff knew that the information was incorrect, they should have disapproved the contact information. (Id. at 8-9.) As relief, Petitioner seeks a "total reversal and expungement" of the Incident Report, restoration of the twenty-seven (27) days of good conduct time, and an investigation of Officer Albright for "being a racist." (Id. at 8.)

## II. DISCUSSION

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause or from statutory law. See Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court has held that that there may be a liberty interest at stake in disciplinary proceedings in which an inmate loses good

---

[1] Accurint is a service provided by LexisNexis that can be used to verify identities and conduct investigations. See LexisNexis Accurint, https://www.accurint.com (last accessed June 2, 2021 11:02 a.m.).

conduct time.  See id. at 557.  Because Petitioner's sanctions included the loss of good conduct time, he has identified a liberty interest for purposes of the case at bar.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison that may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action.  See id. at 563-67.  The Supreme Court has held that the standard of review applicable to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board."  See Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992).  If there is "some evidence" to support the decision of the hearing examiner, the Court must reject any evidentiary challenges by the plaintiff.  See Hill, 472 U.S. at 457.  The Hill standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. See Thompson v. Owens, 899 F.2d 500, 501-02 (3d Cir. 1989).

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, et seq., and entitled Inmate Discipline and Special Housing Units.  These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court.  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).  Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations

has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. See 28 C.F.R. § 541.5. Under the regulations, an inmate "ordinarily receives[s] the incident report within 24 hours of staff becoming aware of . . . involvement in the incident." See id. § 541.5(a) (emphasis added). The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends, or holidays. See id. § 541.7(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine. See id. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. See id.

A DHO "will only conduct a hearing on the incident report if referred by the UDC." See 28 C.F.R. § 541.8. An inmate will receive written notice of the charges twenty-four (24) hours before the DHO hearing unless the inmate waives the notice requirement, in which case the DHO may conduct the hearing sooner. See id. The inmate is permitted to have a staff representative at the hearing and entitled to make a statement and present documentary evidence. See id. After the hearing, the DHO will either: (1) find the inmate committed the prohibited act or similar one described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review, and disposition. See id. If an inmate is found to have committed a prohibited act, the DHO may impose any of the available sanctions listed in Table 1 and 2 of § 541.3. See id. Finally, the written report or decision of the

5

DHO will contain the following: (1) whether the inmate was advised of his or her rights during the proceedings; (2) the evidence relied on by the DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed. See id.

A. **Whether Petitioner Received His Due Process Rights**

The Court concludes that, contrary to Petitioner's arguments, he received his procedural due process rights consistent with Wolff and the BOP regulations. The record reflects that Petitioner received a copy of the Incident Report on July 20, 2020, and the hearing before the DHO was held on July 30, 2020. (Doc. No. 15-1 at 12.) The record also demonstrates that Petitioner was advised of his rights, waived his right to a staff representative, and waived his right to call witnesses. (Id. at 12-13.) Moreover, Petitioner did not present any documentary evidence. (Id. at 12.) Finally, Petitioner received a copy of the DHO's written decision, which included a review of the evidence relied upon and the rationale behind the disciplinary action, on August 6, 2020. (Id. at 15.)

In his § 2241 petition and his traverse, Petitioner appears to suggest that the DHO was not sufficiently impartial. (Doc. Nos. 1 at 8; 16 at 4.) According to Petitioner, the DHO sided with staff, "prejudged" him, and "declared him guilty way before he even appeared for the hearing." (Doc. No. 16 at 4.) While Petitioner is correct that he was entitled to an impartial hearing officer, see Wolff, 418 U.S. at 571, his conclusory allegation of bias is unavailing. In the context of a prison disciplinary proceeding, the requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge from sitting on the disciplinary body." See Meyers v. Aldredge, 492 F.2d 296, 306 (3d Cir. 1974). Petitioner simply has not demonstrated that the DHO was "personally or substantially involved in the circumstances underlying [the

investigation of the] charge" such that the DHO should have not presided over the hearing.  See Greer v. Hogston, 288 F. App'x 797, 799 (3d Cir. 2008).  Petitioner's "generalized critique" of the DHO is insufficient to demonstrate the degree of bias necessary to sustain a due process violation.  See Lasko v. Holt, 334 F. App'x 474, 476 (3d Cir. 2009).

Petitioner also asserts that he attempted to provide a copy of his TRULINCS contact list to the DHO for consideration but that the DHO told him, "I believe you, I don't need to see that." (Doc. No. 16 at 3-4.)  He maintains that the DHO refused to accept and take into consideration documentary evidence that Petitioner's contact list always consisted of nicknames.  (Id.) Nothing in the record before the Court, however, supports Petitioner's assertion that his request to present documentary evidence was denied.  In his decision, the DHO specifically indicated that "no documentary evidence was provided for consideration." (Doc. No. 15-1 at 12.) Petitioner has not cited any evidence to the Court that suggests otherwise.  See Laor v. Fed. Bureau of Prisons, No. 08-3532 (RBK), 2009 WL 1410728, at *6 (D.N.J. May 15, 2009) (concluding that the inmate-petitioner was not denied an opportunity to present documentary evidence at his disciplinary hearing because "there [was] no indication in the DHO Report that he made any specific request[s] for documents that were denied").  Moreover, as noted infra, the DHO did consider Petitioner's completed TRU inmate contacts listing.  (Doc. No. 15-1 at 14.) Accordingly, based on the record before it, the Court finds that Petitioner received all the due process protections to which he was entitled.

  **B.**  **Whether the DHO's Decision Was Based on Sufficient Evidence**

With respect to the sufficiency of the evidence, the DHO stated the following in his decision finding Petitioner guilty of Code 297, phone abuse-disrupt monitoring:

> During this discipline hearing, the following information was evidentiary and documented by the DHO in his findings.

7

[Petitioner's] involvement in the incident, as noted in Section 11 of Incident Report Number 3417287[,] was reviewed. Paraphrased, Zachery Albright writes: On July 20, 2020 at approximately 11:15 AM, this officer became aware of inmate Abdul Cheadle's #11449-007 phone list in which he does not have the correct name on record for phone number (773) [redacted]. Inmate Cheadle has the contact information for that number listed under his active contacts as first name Rev and last name Rev with an address of Calumet Park, Illinois. The area code on TRUfone and location is in Chicago, Illinois. Inmate Cheadle's last call to this number was on July 8, 2020 at 3:22 PM. By not having a correct first name and last name documented for this contact number, inmate [Cheadle] is in violation of PS 4500.12. This violation prohibits monitoring staff from knowing the true identity of this contact. The phone number (773) [redacted] comes back to multiple inmates['] contact information at LSCI Allenwood. Inmate [redacted] has the contact information as first name [redacted] and last name [redacted]. Inmate [redacted] has the contact information as first name A[redacted] and last name B[redacted]. Inmate [redacted] has the contact information as first name Attorney Lawrence and last name K[redacted]k. Inmate [redacted] has the contact information as first name Damon and last name Oryan. Inmate [redacted] has the contact information as first name Mr. and last name D[redacted]. Inmate [redacted] has the contact information as first name R[redacted] and last name N[redacted]. Inmate [redacted]-032 has the contact information as first name C[redacted] and last name C[redacted].

Program Statement 4500.12, page 133, paragraph c (Trust Fund/Deposit Fund Manual) states: c. Contact List. Inmates may only communicate with approved persons on their contact lists for the purpose of postal mail, TRUFONE, Public Messaging, and/or any person to whom they wany to send funds. It is the inmate's responsibility to maintain his/her own list with accurate contact information, to include first name; last name; relationship; language; and postal address. Inmates are subject to disciplinary action for lying and/or providing false or fictitious information regarding a contact (e.g., when complete name is not used; when information is altered to hide the identity of the contact; and any/all other attempts to mislead reviewing and monitoring staff as to the true identity and contact information).

Further inculpatory evidence in the form of an Accurint report showed telephone number 773-[redacted] belonging to [redacted], Gurnee IL, 60031. Trust Fund/Deposit Fund Manual, Page 133, paragraph c, cites an inmate contact list must contain "accurate" inmate provided contact information with respect to TRUFONE contacts, to include first name, last name, and relationship. Further, disciplinary action can result from inmate provision of false or fictitious contact information. Cheadle's completed TRU Inmate contacts listing cited telephone number 773[redacted] belonging to "Rev Rev," Calumet Park, IL. A TRUFONE report showed a call placed from [Cheadle's] account to 773[redacted], on July 8, 2020, at 1522.

> Upon questioning by the DHO, Cheadle denied the charge. He elaborated upon his plea by stating, "My phone numbers have always been the same." The DHO did not find this testimony compelling in showing the charged act not committed. Given multiple inmates, to include Cheadle, placed telephone number 773[redacted] on their contact lists within a short period of time (roughly July 1, 2020 through July 19, 2020) and all inmates, to include Cheadle, used first and last names, as well as location and relationship of contact that were different for this same telephone number. This related case information was verified as factual by the DHO during document review for each case. This behavior [led] the DHO to believe there was an attempt to secret the individual associated with telephone number 773[redacted]. The motive for this deception was unknown. Despite this, the behavior of Cheadle, specific to his incident report as written and declared by Zachery Albright, showed on July 8, 2020 (telephone call placed to 773[redacted, at 1522), [Cheadle] interfered with staff monitoring of his telephonic contacts by the call placement to an individual fictitiously identified by him on his TRU Inmate Contacts, as "Rev Rev."
>
> After the consideration of evidence documented above, the DHO has drawn the conclusion the greater weight of the evidence, listed in the paragraphs above, supported the finding Cheadle, Abdul, Register No. 11449-007, committed the prohibited act of Telephone Abuse, Code 297, on July 8, 2020, at 1522, at LSCI Allenwood, PA.

(Doc. No. 15-1 at 13-14.) Moreover, the DHO explained the imposed sanctions, stating:

> [Petitioner's] behavior of no[t] providing an accurate first and last name for a community telephonic contact hindered staff['s] ability to know the true identity of the contact. Accordingly, disallowed good conduct time is sanctioned to punish the inmate for his misconduct, while loss of telephone and commissary privileges may aid in deterring him and possibly other inmates from negatively acting out while incarcerated.

(Id. at 15.)

Petitioner appears to suggest that the evidence was insufficient to support a violation of Code 297 because Officer Albright knew which phone number he had called and because he used his own inmate pin number to make the call, therefore giving staff the ability to monitor the call. (Doc. No. 1 at 6-7.) He suggests that, at most, he should have been charged with a violation of Code 313, lying or providing false and/or fictitious information regarding a contact, and that 300-level prohibited acts do not "carry a loss of 27 days of [good conduct time] as a

possible sanction." (Id. at 7.) However, a "DHO need not accept what the inmate perceives to be the 'best' or most convincing or persuasive set of facts." See McRae v. Ebbert, No. 3:18-cv-2298, 2019 WL 6839314, at *5 (M.D. Pa. Dec. 16, 2019). When an inmate challenges the sufficiency of the evidence supporting the DHO's decision, "the 'some evidence' standard does not require . . . independent assessment of the credibility of witnesses or weighing of the evidence." See Speight v. Minor, 245 F. App'x 213, 216 (3d Cir. 2007) (quoting Hill, 472 U.S. at 455-56). Upon review of the record before it, the DHO's decision to find Petitioner guilty of violating Code 297 is clearly supported by "some evidence." See Denny v. Schultz, 708 F.3d 140, 145 (3d Cir. 2013) (noting that a court "need only find that the [Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause"); see also Lloyd, 514 F. App'x at 79-80 (rejecting the inmate-petitioner's argument that his charge should have been reduced to a less severe violation because some evidence supported the DHO's decision to find him guilty of the more severe charge).

### C. Petitioner's Equal Protection Claim

Petitioner suggests that Officer Albright discriminated again him by charging only black inmates, including himself, with violations of Code 297 when white inmates were also in violation for having the exact same phone number under the wrong contact information. (Doc. No. 1 at 7.) To succeed on such a claim, Petitioner "must demonstrated that the decision makers in his case acted with a discriminatory purpose." See Lloyd v. Shartle, 514 F. App'x 77, 80 (3d Cir. 2013) (citing McCleskey v. Kemp, 481 U.S. 279, 292 (1987)). Other than his conclusory assertion, Petitioner has provided no evidence to suggest that Officer Albright charged him with a violation of Code 297 solely because he is black. Thus, Petitioner is not entitled to relief on his equal protection claim.

## III. CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) will be denied. An appropriate Order follows.